**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

THE RESEARCH FOUNDATION OF STATE
UNIVERSITY OF NEW YORK; THE BOARD
OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,

                                        Plaintiffs,

                - v -                                        Civ. No. 1:07-CV-1260
                                                                    (GLS/RFT)

LUMINEX CORPORATION and
LUMINEX MOLECULAR DIAGNOSTICS, INC.,

                                        Defendants.

## MEMORANDUM-DECISION and ORDER

This action concerns an alleged breach of contract and patent infringement.  Presently before the Court is Defendants' Motion to Change Venue, which the Plaintiff[1] opposes, and Plaintiff's Motion to Strike the Defendants' Reply to its Response to the Motion to Change Venue, which Defendants oppose.  Dkt. Nos. 48, 51, 53, 55, & 57-59.

## I. BACKGROUND

The following background information regarding the claims brought in this action are derived from the Second Amended Complaint.  Dkt. No. 77, Second Am. Compl.  The Research Foundation is a non-profit entity located in Albany, New York, and is under contract with the State University of New York (SUNY) to administer programs in furtherance of research and education within the SUNY system.  In 1991, The Research Foundation obtained two patents on an invention

---

[1] We refer only to Plaintiff The Research Foundation throughout this Order as The Board of Trustees of the University of Illinois was not a party to this action when the Motion to Change Venue was filed and responded to. Furthermore, The Board of Trustees for the University of Illinois has not submitted any papers with respect to this Motion.

developed by Dr. Michael Lane, Dr. Albert Benight, and Brian Faldasz, for designing synthetic DNA sequences. In 1992, the three inventors formed TM Technologies, Inc. (hereinafter "TM Technologies"), a biotech research company located in Woburn, Massachusetts. The Research Foundation subsequently licensed the patented intellectual property and associated know-how to TM Technologies through a License Agreement. The License Agreement was thereafter transferred to TM Technology's parent company, TM Bioscience. In the late 1990's, the research facility in Woburn was shut down and all operations were shifted to a new TM Bioscience facility located in Toronto, Canada. In 2001, TM Bioscience entered into a strategic partnership with Luminex, an Austin, Texas-based biotech company, which allegedly included the use and development of the patented intellectual property and associated know-how in question. In 2007, Luminex purchased TM Bioscience and renamed it Luminex Molecular Diagnostics, Inc. (hereinafter "LMD").

The Research Foundation filed the instant action on December 3, 2007, alleging that Luminex and LMD breached the original License Agreement by failing to gain its consent to transfer the intellectual property and know-how, and that TM Bioscience failed to pay royalties mandated by the License Agreement.

## II. DISCUSSION

### A. Motion to Strike

Plaintiff has moved to strike the Defendants Reply to their Response to the Motion to Change Venue. Dkt. Nos. 57-59. Pursuant to the Local Rules, a party must have the court's prior permission to file a reply to a response to a non-dispositive motion. N.D.N.Y.L.R. 7.1(b)(2). Such permission was granted in this case. *See* Dkt., Text Order, dated June 9, 2008. The Local Rules do not, in fact, establish page limits for replies filed to responses to *non-dispositive* motions, though

there is a clearly established ten (10) page limit for replies filed to responses to *dispositive* motions, and in practice, most parties adhere to that ten (10) page limit in either case.  N.D.N.Y.L.R. 7.1(b)(1).

For these reasons, the Motion to Strike is **denied**.  Because the Court finds information provided in the Reply to be relevant to the issues presented in this Motion, the Reply will be considered along with the original Motion and the Plaintiff's Response thereto.

### B.  Change of Venue

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Motions to transfer venue brought pursuant to 28 U.S.C. § 1404(a) are governed by a two-part test: (1) whether the action could have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer.  *Schomann Int'l Corp. v. Northern Wireless, Ltd.,* 35 F. Supp. 2d 205, 213 (N.D.N.Y. 1999).  The goal of § 1404(a) is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (internal quotation marks and citation omitted).  The moving party bears the burden of establishing that transfer is appropriate and that the motion should be granted. *Factors Etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds by Pirone v. Macmillion, Inc.*, 894 F.2d 579 (2d. Cir. 1990).

With respect to the first prong, in this case, federal subject matter jurisdiction is based on diversity of citizenship and a federal patent infringement claim brought pursuant to 35 U.S.C. § 271.  When the jurisdictional basis for an action is not based solely on diversity, venue will be proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

> giving rise to the claim occurred, or a substantial part of property that is the subject
> of the action is situated, or (3) a judicial district in which any defendant may be
> found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Luminex is based in Austin, Texas, which is located within the Western District of Texas.  Plaintiff

alleges, *inter alia*, that Defendants breached the License Agreement and benefitted from unjust

enrichment at the Plaintiff's expense, and that "some of the many violations" of the License

Agreement occurred in Austin.  Dkt. No. 53, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Change

Venue (hereinafter "Pl.'s Opp'n"), at p. 8.  Thus, this action could have properly been brought in

the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the

events giving rise to the claim allegedly occurred in Austin, Texas.  Furthermore, under 28 U.S.C.

§ 1400, a civil action for patent infringement "may be brought in the judicial district where the

defendant resides, or where the defendant has committed acts of infringement and has a regular and

established place of business."

Now that the first prong has been met, we must decide whether the balance of convenience

and justice favors transfer of this action.  "In making this determination, a judge has considerable

discretion . . . according to an individualized, case-by-case consideration of convenience and

fairness."  *Flaherty v. All Hampton Limousine, Inc.*, 2002 WL 1891212, at *1 (S.D.N.Y. Aug. 16,

2002) (internal quotation marks and citations omitted); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110,

117 (2d Cir. 1992) (stating that motions to change venue are determined on a "case-by-case basis").

A non-exclusive list of factors to consider includes:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location
> of relevant documents and the relative ease of access to those sources of proof; (4)
> the situs of the operative events in issue; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the relative means of the parties; (7) the
> comparative familiarity of each district with the governing law; (8) the weight

*-4-*

accorded a plaintiff's choice of forum; and (9) judicial efficiency and the interests of justice.

*Flaherty v. All Hampton Limousine, Inc.*, 2002 WL 1891212 at *2 (citations omitted).

"No individual factor is determinative and a court has discretion to weigh each factor to reach a fair result." *Id*. (citations omitted); *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d. 429, 449 (N.D.N.Y. 2007) (quoting *Flaherty*).  We consider these factors *ad seriatim*.

1.  *Convenience of the Witnesses*

Convenience of the witnesses is "probably the single-most important factor in the analysis of whether transfer should be granted."  *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 249 (N.D.N.Y. 2001) (citation omitted).  "While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor."  *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990) (citation omitted) (cited in *Sherman St. Associates, LLC v. JTH Tax, Inc*., 2004 WL 2377227, at *5 ( D.Conn. Sept. 30, 2004)).  In weighing the convenience of witnesses, courts should consider both the number of witnesses located in a given venue and the relative salience of their prospective testimony.  *See Fuji Photo Film Co., Ltd. v. Lexar Media, Inc*., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (stating "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide") (internal quotation marks and citation omitted).

With their Motion, Defendants submitted an Affidavit from David Reiter, General Counsel for Luminex, who stated that ten (10) potential witnesses reside within the Western District of Texas, thirteen (13) in Toronto, Canada,[2] and zero (0) in Albany, New York.  Dkt. No. 48, Defs.' Mot. to Change Venue, Ex. A, David Reiter, Esq., Aff., dated June 2, 2008, at ¶¶ 12-13 & 15.

---

[2] These potential Toronto-based witnesses were not identified by name in the original Motion papers.

However, in their Reply to the Plaintiff's Response to the Motion, Defendants identify thirteen (13) potential witnesses who reside in the Western District of Texas and only eight (8) who reside in Toronto, Canada.  For its part, Plaintiff avers that "almost all" of their key witnesses would be inconvenienced by a change of venue to Texas, and have named six (6) potential witnesses who reside in Albany or within a reasonable driving distance thereof.  Pl. Opp'n at p. 11.

Plaintiff states that the following testimony would be offered by these six (6) potential witnesses: Dr. Lane would testify about his role in the development of the invention and the relationships between TM Technologies and The Research Foundation, and TM Technologies and TM Bioscience; Mr. Faldasz would "testify about his role in the development of the technology and the transfer of the product know-how from TM Technologies to Tm Bioscience;" Patricia Johnson would testify about the License Agreement which she negotiated and signed, and her duties of monitoring TM Technologies' compliance with that agreement in her former role as Interim Director of the Technology Transfer Office of The Research Foundation; Albert Muir would testify about "his role as a licensing coordinator . . . and his involvement in monitoring TM Technologies' compliance with the License Agreement;" Eugene Schuler would testify about "the relationship between The Research Foundation and TM Technologies, and the analysis and review of the invention disclosure submitted to The Research Foundation by TM Technologies; Dr. Guven Yalcintas, current Vice-President (hereinafter "VP") for Technology Transfer of The Research Foundation, would testify about the "purpose, organization, and operations of The Research Foundation, as well as his communications with Luminex, LMD, and Tm Bioscience before and after the acquisition."   Pl.'s Opp'n at pp. 11-12.

Defendants state that the following testimony would be offered by these thirteen (13)

witnesses who reside in the Western District of Texas: Keld Sorenson, Sherry Dunbar, Don Chandler, and Jim Jacobson are scientists with Luminex who would testify about the "products that form the basis of Plaintiff's claims;" Grant Gibson, a former Luminex employee, would testify about Luminex products relevant to this case; Randel Marfin, VP of Luminex Bioscience Group and Marketing, Sales, and Business Development, would testify about events leading up to Luminex's acquisition of LMD; Harriss Currie and Kristi Richburg, both Luminex financial officers, would testify about sales and royalty issues; Oliver Meek, VP of Quality Assurance for Luminex, along with his subordinates, Travis Davies and Van Fitzgerald, would testify about the products at issue; Christie Hughes, previously a Product Manager, would also testify about the products at issue; Gregory Gosch, VP of Luminex Bioscience would testify about the marketing of the products at issue.  Dkt. No. 55, Defs.' Reply at pp. 5-6.

Defendants also identify eight (8) potential witnesses who reside in or near Toronto, Canada. Jeremy Bridge-Cook is the VP of LMD and has served in that capacity for the last seven (7) years; Richard Janeczko is the Chief Scientific Officer for LMD, and, according to Defendants, "possibly knows more about the allegedly infringing products than any other person;" Frank Merante, Susan Bortolin, and Connie Lisle are scientists at LMD who have knowledge of "key technology and products;" Ravi Correa is the Senior Director of Finance at LMD and would testify about LMD's finances, royalty payments, and other relevant matters; Graham Henderson, LMD's Facilities Manager, administers intellectual property for LMD; Daniel Fieldhouse, a former LMD employee, has knowledge relevant to the case including "xMAP techology."  Defs.' Reply at pp. 5-6.

To summarize, Plaintiff has identified six (6) potential witnesses who reside in or near Albany who would testify about the development of the patented technology at issue, the nature of

the contractual relationship between The Research Foundation and TM Technologies, and their efforts to monitor TM Technologies' compliance with the License Agreement.  Of those six persons, five (5) would be non-party witnesses.  Defendants have identified thirteen (13) potential witnesses who reside in the Western District of Texas.  Of those thirteen, twelve (12) are current Luminex employees, and only one (1) would be a non-party witness.  *Race Safe Systems, Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003) ("[E]mployees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship.") (citation omitted).  These thirteen potential witnesses would testify about the products relevant to this case, the marketing and sales of those products, the payment of royalties, and Luminex's acquisition of LMD.  Defendants have also identified eight (8) potential witnesses who reside in or near Toronto, Canada, seven (7) of whom are LMD employees, and therefore only one (1) of whom would be a non-party witness.

Thus, in Albany, Austin, and Toronto, there exists a critical mass of potential witnesses. Defendants assert that the potential witnesses they have identified who live in the Western District of Texas will offer testimony regarding the products that allegedly violated the License Agreement that is much more material when compared to that of the potential witnesses located in Albany, identified by Plaintiff, who would testify about the contractual relationship between The Research Foundation and TM Technologies and the development of the intellectual property at issue.

It is clear to the Court, however, that both the contractual relationship and the products that are the basis for the allegation of the patent infringement are material issues in this case.  Moreover, it appears that if any locale has a claim to the most material witnesses, it would be Toronto.  TM Technologies/TM Bioscience was the original party to the License Agreement with The Research

Foundation, not Luminex.  Indeed, despite the Defendants' list of Luminex employees who would testify about the products at issue, they indicate that Richard Janeczko, Chief Scientific Officer for LMD, "possibly knows more about the allegedly infringing products than any other person."  Defs.' Reply at p. 7.  Defendants assert that even for LMD's Toronto-based employee witnesses, the Western District of Texas is the preferable venue because of the availability of direct and less expensive flights from Toronto to Austin, and because those employees would remain productive while visiting Austin for the purposes of this litigation.  Plaintiff counters that Albany is much closer to Toronto, and states that there are several direct and daily flights from Toronto to Albany.

In any event, this lawsuit, should it go to trial, will likely include witnesses from all three locations, as well as potential witnesses from Illinois, and as far away as Oregon.[3]  Given that of the thirteen (13) potential witnesses who reside in the Western District of Texas, twelve (12) are would-be party witnesses, and given also that there are eight (8) identified potential witnesses who live in or near Toronto, and six (6) in or near Albany, five (5) of whom have been identified as non-party witnesses, this factor does not clearly weigh in favor of the Defendants.

2.  *Convenience of the Parties*

Defendants assert that it would be more convenient for both parties to litigate this case in Austin because both parties have primary litigation counsel based in Texas.  Defendants also restate their argument that the cost of travel to Albany from both Austin and Toronto makes the Western District of Texas a more cost-effective location to litigate.  However, as Plaintiff indicates, the convenience of counsel is not mentioned in § 1404(a), and has generally been given little weight in

---

[3] Dr. Albert S. Benight, one of the original inventors of the technology, currently resides in Portland, Oregon. Dkt. No. 53, Pl.'s Opp'n, Dr. Albert S. Benight, Aff., dated June 19, 2008, at App. 3-13. (The pages of the Appendices attached to the Plaintiff's Response in Opposition to the Motion are numbered App. 1 through App. 123.  We will use this numbering for ease of reference.)

this factor-balancing analysis. *See Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 988 (E.D.N.Y. 1991). Furthermore, given the geographical distance between the parties, litigating this case is going to be more inconvenient for whichever party is not located within the chosen venue. *See, e.g., Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 756 (S.D.N.Y. 2000) ("The convenience of the parties factor does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other."). We note also that both parties have retained local counsel located in Albany. Thus, this factor does not weigh heavily in favor of Defendants.

3. *Ease of Access to Evidence*

Defendants assert that the prospect of producing millions of pages of documents and other evidence located in Austin would be a huge inconvenience and a significant and unnecessary cost. Defendants assert that approximately 2,000 floppy disks and dozens of back-up server tapes contain inaccessible information and must be inspected in Austin, and that it would be much more convenient to ship products that are currently located at LMD in Toronto to Austin, where arrangements can be easily made for their storage. Defs.' Reply at p. 9. Plaintiff responds that the parties have already agreed to produce all documents electronically, through which 137,000 documents have thus far been produced. Pl.'s Opp'n at pp. 13-14.

It is not clear to the Court why shipping products from Toronto to Austin would be somehow easier than shipping products from Toronto to Albany, though Defendants aver that the Luminex facility in Austin is available for storage and for "the maintenance of cutting-edge technology and products." Defs.' Reply at p. 9. Nor is it clear to the Court why documents contained in floppy disks and back-up server tapes, even if they must be restored in Austin, cannot be thereafter shared

electronically.  In that respect, Defendants have cited to no Affidavit or other foundational document that would help explain their statement that "some [documents] may not be produced electronically." *Id*.  Given that an agreement to electronically produce documents already exists, there should be no costs for copying and shipping those documents.  For this reason, as Plaintiff notes, other courts have given little weight to this factor in light of the widespread use of electronic document production.  *See Romano v. Banc of Am. Ins. Serv.*, 528 F. Supp. 2d 127, 132 (E.D.N.Y. 2007) (citing cases).

However, the location of millions of documents in Austin and the availability of maintenance and storage for relevant products there weighs in favor of a venue transfer, though not significantly so.

4.  *Situs of Operative Events*

Like the location of relevant witnesses, the apparent situs of the operative events forming the basis for this lawsuit occurred in New York, Toronto, and Texas.  The original License Agreement and the development of the patented technology occurred in New York, and the alleged breaches of that agreement occurred in both Toronto and Texas through the alleged wrongful transfer and use of intellectual property from TM Bioscience/LMD in Toronto to Luminex in Austin. Thus, because significant events relevant to this action occurred outside of Austin, Texas, we cannot say that this factor weighs in favor of transfer to the Western District of Texas.

5.  *Availability of Process to Compel the Attendance of Unwilling Witnesses*

Pursuant to Federal Rules of Civil Procedure 45(b)(2) and 45(c)(3)(A)(ii), a Court may not enforce a subpoena that directs a non-party witness to travel more than 100 miles from where that person resides or regularly transacts business in person.  As stated earlier, Defendants have

identified one (1) non-party witness who resides in the Western District of Texas; Plaintiff has

identified five (5) non-party witnesses who reside within driving distance of Albany who have stated

that they would be unwilling to travel to Austin to provide testimony.   Pl.'s Opp'n at p. 12.

On balance, this factor favors Plaintiff, though we agree with Defendants that it does not

carry much weight.  Defendants state that "witnesses who are no longer employed by The Research

Foundation or SUNY could easily give depositions in short order in New York."  Defs.' Reply at

p. 15.  We point out, however, that the Defendants' suggestion with regards to depositions cuts both

ways: Defendants could just as easily depose any of the thirteen (13) potential witnesses who reside

in the Western District of Texas, or the eight (8) who live in or near Toronto.

6.  *The Relative Means of the Parties*

The principle distinction between the parties as businesses is that The Research Foundation

is a not-for-profit organization and Luminex is a for-profit organization.  The Research Foundation

boasted revenues of $858 million in 2007, ninety-two percent (92 %) of which came from grants

awarded for sponsored research activities, while Luminex boasted revenues of $75 million in 2007.

Pl.'s Opp'n, Derek Johnson, Aff., dated June 20, 2008, Ex. E, at App. 75-76 & Ex. F, 2007 Annual

Rep. at App. 87.  The Research Foundation directs any payments it receives from royalties and

licenses to the inventors and to SUNY.  Pl.'s Opp'n at p. 20.

Thus neither party appears to want for resources.  The question is whether The Research

Foundation's status as a not-for-profit should be considered in our analysis of the relative means of

the parties.  Based on the precedents established in the caselaw provided, we are not persuaded that

such a consideration is proper.  The appropriate focus should be on the resources available to each

party, irrespective of their tax-exempt status.  *See Hummingbird USA, Inc. v. Texas Guaranteed*

*Student Loan Corp*., 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007) (dismissing the argument that one party's status as a non-profit organization deserved consideration because such argument did "not address the *relative* means of the parties") (emphasis in original). Therefore, because both parties have significant resources at their disposal, we find that this factor favors neither party.

7. *Each District's Comparative Familiarity with the Governing Law*

It is undisputed that per the License Agreement, New York law will govern this action to the extent its jurisdiction permits.  It is also undisputed that federal courts "should not be overly concerned with which state law is applicable when deciding a motion to transfer venue." *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. at 59 (citing cases).  Although Defendants contend that the Western District of Texas is particularly familiar with patent cases, and Plaintiff's contend that a federal court in the Northern District of New York is better suited to apply New York law, we are confident that courts in either district would have the capacity to correctly apply the relevant state and federal laws that control this action.  Therefore, we find that this factor favors neither party.

8. *Plaintiff's Choice of Forum*

"Generally, the plaintiff's choice of forum is entitled to considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant.  Where the factors are equally balanced, the plaintiff is entitled to his choice of forum." *Wagner v. New York Marriott Marquis,* 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) (citations omitted). Furthermore, "[t]here is no requirement that there must be a substantial nexus between the chosen forum and the claim for the choice of forum to receive deference; rather there must be some material relation." *Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d at 1111 (internal quotation

marks and citation omitted).  However, such deference should not be strictly applied in a case "where none of the operative facts of the action occur in the forum selected by the plaintiff." *Wagner v. New York Marriott Marquis,* 502 F. Supp. 2d at 317 (internal quotation marks and citation omitted).

This is not a case where none of the relevant facts are present in the Plaintiff's chosen venue. At a minimum, the License Agreement was executed and the patented technology initially developed in Albany, New York.  In addition, it appears that significant facts related to the alleged breach of the License Agreement occurred in Toronto, Albany, as well as Austin.  Because operative facts arose out of all three locations, Plaintiff's choice of venue should not be disturbed unless we find that the balance of factors favors Defendants.

9.  *Judicial Efficiency and the Interests of Justice*

"The interest of justice has been deemed the most important transfer factor."  *Race Safe Systems, Inc. v. Indy Racing League*, 251 F. Supp. 2d at 1111.  In this case, after reviewing the previous eight factors, it is clear that the circumstances of this action are far from ideal.  Wherever the venue, this action would present certain logistical challenges and inconveniences that are inevitable in cases involving parties from different states, and in this case, countries, that are set at great geographic distances from one another.  Given that reality, we find that to shift the venue from New York to Texas would make litigating this action more convenient for one party, not for all parties.  *See, e.g., Schomann Intern. Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 214 (N.D.N.Y. 1999) (denying transfer when shifting the venue would "simply shift the inconvenience from one party to the other") (internal quotation marks and citation omitted).  Therefore, considering all the above factors and the paramount interest of justice, we find that the Defendants have not met

their burden of establishing that a change of venue is appropriate, and their Motion is **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that the Motion to Change Venue (Dkt. No. 48) is **denied**; and it is further

**ORDERED**, that the Motion to Strike Defendants' Reply (Dkt. No. 57) is **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing Order.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   November 3, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-15-*